UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 1-05-CV-10479-FDS


IN RE:

GEORGE J. VASILIADES
DEBTOR


_____


GEORGE J. VASILIADES
APPELLANT


v.


KATHLEEN DWYER, CHAPTER 7 TRUSTEE OF GEORGE J. VASILIADES
APPELLEE


APPELLATE BRIEF OF GEORGE J. VASILIADES


Gary W. Cruickshank, Esq.
Counsel to George J. Vasiliades
21 Custom House Street
Suite 920
Boston MA 02110
(617) 330-1960
(BBO107600)
gwc@cruickshank-law.com


May 31, 2005

## TABLE OF CONTENTS

STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION ............. 1

STATEMENT OF ISSUES ON APPEAL ................................. 1

NATURE OF THE CASE, COURSE OF THE PROCEEDINGS
AND DISPOSITION IN THE COURT BELOW ........................... 2

STATEMENT OF FACTS RELEVANT TO THE ISSUES
UNDER REVIEW .................................................. 3

SUMMARY OF ARGUMENT .......................................... 12

APPLICABLE STANDARD OF
REVIEW ....................................................... 13

ARGUMENT ..................................................... 13

CONCLUSION ................................................... 30

## TABLE OF AUTHORITIES

### CASES

In Re Arnold,
252 B.R. 784 (9th Cir. BAP [Cal.] 2000) ...................... 13

In the Matter of Beaubouef,
966 F.2d 177([C.A. 5] 1992) .............................. 15, 16

Boroff v. Tully (In Re Tully),
818 F.2d 106 (1st Cir. 1987) .................. 2, 21, 22, 23, 29

Commerce Bank & Trust Co. v. Burgess (In Re Burgess),
955 F.2d 134 (1st Cir. 1992) .......................... 1, 17, 20

In Re Doan,
672 F.2d 831, 833 (11th Cir. 1982) .......................... 13

In Re Dolata,
306 B.R. 97, 149 (Bankr.W.D.PA. 2004) ................... 16, 17

Gillickson v. Brown (In Re Brown),
108 F.3d 1290, 1295 (10th Cir. 1997) .......................... 23

In Re Grondin,
232 B.R. 274, 280 (Footnote 7) (1st Cir. B.A.P. (NH) 1999) ... 23

Jeffrey v. Desmond,
70 F.3d 183, 185 (1st Cir. 1993) ............................. 13

In Re Kahan,
28 F.3d 79, 81 (9th Cir. 1994) ............................... 13

In Re Michael,
163 F.3d 526 [C.A. Mont. (1998)] ............................. 13

In the Matter of Muscola,
505 F.2d 274, 277 (1st Cir. 1994) ............................ 22

Peterson v. Scott (In Re Scott),
172 F.3d 959 (7th Cir. 1999) ............................. 2, 18

In Re Porter,
276 B.R. 32 (Bankr.D.Mass. 2002) ............................ 16

In Re Sanders,
128 B.R. 963, 972 (Bankr.W.D.La. 1991) ................... 15, 16

In Re SPM Mfg. Corp.,
984 F.2d 1305 (1st Cir. 1993) ............................... 13

In Re Sullivan,
204 B.R. 919 (Bankr.N.D.Tex. 1997) ................... 13, 14, 15

In Re Varasso, (Desmond v. Varasso),
37F.36 760 (1st Cir. 1994) ........................... 2, 21, 29

In Re Wilson,
290 B.R. 333, 339 fn 1 ...................................... 17

**STATUTES AND AUTHORITIES**

11 U.S.C. 341(a) ............................................. 4

11 U.S.C. 727 ................................. 2, 3, 15, 17, 21

11 U.S.C. 727(a)(2) .......................................... 20

11 U.S.C. 727(a)(4) .............................. 3, 12, 16, 20

11 U.S.C. 727(a)(4)(a) ....................................... 20

28 U.S.C. 151(a)((1) .......................................... 1

Rule 1009(a) ................................................ 13

Rule 4005 Federal Rule of Bankruptcy Procedure ............... 20

Rule 8001 Federal Rules of Bankruptcy Procedure ............... 1

Rule 8013 Federal Rules of Bankruptcy Procedure .............. 13

Collier on Bankruptcy
15th Ed. Rev., Vol. 4, ¶727.04 [1A] ...................... 15, 20

Collier on Bankruptcy,
15th Ed. Rev., Vol. 6, p.727-12, ¶727.02 [1] .............. 1, 17

Collier on Bankruptcy,
Vol. 6, 15th Ed., p.727-8, §727.01 [2] ............... 2, 18, 21

George Vasiliades, the Appellant in the within appeal, submits the following brief in accordance with the Order of this Court which authorized the Appellant's brief to be filed on or before May 31, 2005.  Mr. Vasiliades will be hereinafter referred to as the Debtor.

## I.   STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

Jurisdiction of this Court is based upon 28 U.S.C. 151(a)(1) and Rule 8001 of the Federal Rules of Bankruptcy Procedure.

## II.   STATEMENT OF ISSUES ON APPEAL

1.   Did the Bankruptcy Court err as a matter of law when it denied the Debtor his discharge under Chapter 7 when the Debtor filed three (3) separate amendments to schedules and/or Statement of Financial Affairs, all of which were:

> Not subject to objection by the Trustee;
>
> Subject to approval by the Court;
>
> Filed and allowed prior to the date that this adversary proceeding was filed;

2.   Did the Bankruptcy Court err as a matter of law in articulating that one of the reasons for barring the discharge of the Debtor was his failure to list two bank accounts, when those

1

bank accounts were not one of the issues raised by the Trustee in her Complaint?

3. Did the Bankruptcy Court err as a matter of law when it cited only the case of Boroff v. Tully (In Re Tully) 818 F.2d 106 (1st Cir. 1987) when the First Circuit Court of Appeals in the later case of In Re Varasso, (Desmond V. Varasso) 37 F.3d 760 (1st Cir 1994) acknowledged that a finding of carelessness would not be sufficient to bar a discharge under 11 U.S.C. 727?

4. Did the Bankruptcy Court err as a matter of law when it denied the discharge of the Appellant because the Court found that the Debtor was not truthful and was unwilling to make a full disclosure at the outset (emphasis by the Bankruptcy Court) of the proceedings when the Court approved all of the Motions to Amend the Schedules and Statement of Financial Affairs filed by the Appellant?

5. Did the Bankruptcy Court err as a matter of law when it found that the Plaintiff had satisfied her burden of proof establishing the Debtor's false oaths when the Court had previously allowed the Debtor to amend his schedules and statement of financial affairs?

## III.  NATURE OF THE CASE, COURSE OF THE PROCEEDINGS AND DISPOSITION IN THE COURT BELOW

On November 14, 2002, the Debtor filed an original petition under Chapter 7 in the United States Bankruptcy Court for the

2

District of Massachusetts, Case No. 02-18232 (hereinafter the "Bankruptcy Case").

On April 18, 2003, Kathleen Dwyer, Chapter 7 Trustee of the Debtor (hereinafter the "Trustee") filed a complaint seeking to object to the discharge of the Debtor pursuant to various Sections of 11 U.S.C. 727.

The Court conducted a trial on November 30, 2004. On January 20, 2005, the Court issued a Memorandum and Order which denied the discharge of the Debtor under 11 U.S.C. Section 727(a)(4), which was Count III of the Trustee's Complaint.

The Debtor timely filed a Notice of Appeal to the United States District Court. Pursuant to an Order of this Court the Debtor has until May 31, 2005 to file this brief.

## IV.   STATEMENT OF FACTS RELEVANT TO ISSUES UNDER REVIEW

The Memorandum of Decision of the Bankruptcy Court, which is included on the Record of Appeal, contains on pages 2 through 9 thereof the salient factual findings of the Bankruptcy Court relative to the issues under review. Said facts are as follows.

The Debtor filed a voluntary Chapter 7 petition on November 14, 2002. The Debtor is well educated. He graduated from the University of Lowell with a bachelor's degree in engineering. He also holds a masters degree in finance from Bentley College.

On the same day he filed his Chapter 7 petition, the Debtor, as president, executed a bankruptcy petition on behalf of A.

3

George Company, Inc., a corporation which he wholly owned. On January 26, 2004, this Court converted the Chapter 11 case of A. George Company, Inc. to a case under Chapter 7. According to the Debtor, A. George Company, Inc. is a successor to an unincorporated business he operated under the name "Olympic Painting." The Debtor has used the name "Olympic" in conjunction with various business endeavors both before and after the incorporation of A. George Company, Inc.

On December 13, 2002, the Debtor filed his Schedules and Statement of Financial Affairs. On December 18, 2002, the Trustee conducted a meeting of creditors pursuant to 11 U.S.C. Section 341(a). On January 8, 2003, the Trustee conducted a further meeting of creditors. The Debtor appeared at the January 8th meeting, but his counsel was not present due to illness. Transcripts of both meetings were submitted in evidence.

At the trial, the Debtor testified that he met with his former bankruptcy attorney, Thomas J. Raftery[1] on November 14, 2002 to sign his bankruptcy petition. He further testified that his attorney gave him a packet of materials to complete. He stated that he wrote by hand his responses to the questions contained in the packet of materials and that his former counsel had the Schedules and Statement of Financial Affairs typed and mailed back to him. The Debtor signed the "Declaration Concerning Debtor's Schedules/Declaration Under Penalty of

---

[1] Attorney Raftery moved to withdraw as counsel on October 30, 2003, and the Court granted his motion.

4

Perjury by Individual Debtor" and the "Declaration Under Penalty of Perjury by Individual Debtor" appearing at the end of the Statement of Financial Affairs on December 12, 2002.  He stated that he mailed the signed Schedules and Statement of Financial Affairs to his attorney for filing with the Bankruptcy Court. His former attorney, however, stated at the §341(a) meeting held on December 18, 2002 that the Debtor filed the Schedules and Statement of Financial Affairs on December 13, 2002 with the Bankruptcy Court because he was out of town.

The Debtor testified that he understood that when he filed his Schedules and Statement of Financial Affairs on December 13, 2002, he was providing information under oath.  Nevertheless, contradicting his testimony at the December 18, 2002 meeting of creditors, he testified that he did not read the language in the Declarations which provide that the information in the Schedules and Statement of Financial Affairs is "true and correct" to the best of the knowledge information, and belief of the signatory. He also stated that his attorney did not advise him about the Declarations and their ramifications.

The Debtor amended his Schedules and/or Statement of Financial Affairs four times prior to trial on January 29, 2003, on March 3, 2003, on March 14, 2003, and on October 14, 2004. The Court takes judicial notice that the Debtor recently amended Schedules B and E on December 16, 2004.  Specifically, the Debtor amended Schedule B once and Schedule F once before the trial, and he amended his Statement of Financial Affairs four times.

5

On Schedule B - Personal Property, the Debtor initially disclosed his common stock in A. George Company, Inc. with a value of $1.00 in response to the directive to list" [s]tock and interests in incorporated and unincorporated businesses." The Debtor did not list an interest in New England Property Services & Construction, Inc. d/b/a Olympic ("New England Property"). On his Statement of Financial Affairs, the Debtor disclosed gross income from his employment by A. George Company, Inc. as follows: 2002 - $65,000; 2001 - $78,000; and 2000 - $50,000.[2]  At that time, he disclosed no other income "from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced," as well as amounts received from those sources for the prior two years. Additionally, he did not disclose any income from sources other than income from employment, trade, or profession, or from operation of his business.

The Debtor's testimony with respect to his assets at the §341 meeting held on December 18, 2002 was consistent with his sworn representations in his Schedules and Statement of Financial Affairs.  For example, following a discussion of the Debtor's interest in A. George Company, Inc., the Debtor responded in the negative to a direct question from the Trustee, "Do you own any other businesses?"  In fact, this testimony was untrue because he had an interest in New England Property.

---

[2]  On its Statement of Financial Affairs, A. George Company, Inc. reported gross income of approximately $2 million for 2002.

6

At the second §341 meeting held on January 8, 2003, after the Trustee learned of New England Property from a search at the Office of the Secretary of State for the Commonwealth of Massachusetts, the Debtor testified that New England Property had been "idle." He added that New England Property had no employees and that when it obtained painting jobs "A. George would go out with its employees and trucks to do the work, because A. George is ... a full service company." At trial, when questioned about his failure to list an ownership interest in New England Property, the Debtor gave two inconsistent explanations. First, he stated that it was owned by A. George Company, Inc. Then, he stated that he overlooked his interest because Michael C. Grasso ("Grasso") ran the company. He then conceded that he did not have a good explanation for the omission.

Three weeks after the second §341 meeting, the Debtor amended Schedule B. In his amended Schedule B filed on January 29, 2003, lie disclosed "[s]tock ownership in New England Property Services, Inc.," adding "[t]he stated market value is estimated as minimal value. The company sells painting jobs and then subcontracts them. The company has no equipment." Although the Debtor amended his Statement of Financial Affairs on January 29th, he did not disclose receipt of any income from New England Property. In his fourth amendment to his Statement of Financial Affairs, however, filed ten months after his original Statement was filed, the Debtor amended his answer to Question 1 and

7

disclosed income from "NE Property Services" in the sum of $10,000 for the year 2002.

New England Property was incorporated in February of 2002, less than one year before the Debtor filed his Chapter 7 petition. The Debtor was its president and one of just two directors. Although Grasso was responsible for New England Property's day to day operations, the Debtor had check signing authority. The following chart summarizes payments made to the Debtor or A. George Company, Inc. from New England Property.

| Date | Check No. | Payee | Signatory | Amount |
|------|-----------|-------|-----------|--------|
| 11/6/02 | 1002 | Olympic Painting | Grasso | $ 1,732.62 |
| 8/16/02 | 167 | Debtor | Grasso | $ 3,297.99 |
| 8/9/02 | 165 | A. George Co. | Grasso | $ 310.75 |
| 7/16/02 | 145 | A. George Co. | Grasso | $ 394.38 |
| 7/10/02 | 141 | A. George Co. | Grasso | $ 1,711.37 |
| 6/13/02 | 126 | Debtor | Debtor | $ 662.50 |
| 6/10/ 02 | 121 | A. George Co. | Debtor | $ 2,061.18 |
| 6/10/02 | 120 | Debtor | Debtor | $ 107.94 |
| Total | | | | $10,248.73 |

The chart shows that of the $10,248.73 in payments made by New England Property to the Debtor or entities in which he had an interest, only $4,068.43 was payable directly to the Debtor. When asked about the discrepancy between the $10,000 disclosed on his Statement of Financial Affairs and the checks totaling approximately $4,000 introduced during the trial, the Debtor

8

testified that the $10,000 was for consulting fees for which there are no records. Additionally, the chart show that New England Property was not idle in the months before the filing of the Debtor's bankruptcy petition.

On his original Schedule B, the Debtor listed a contingent and unliquidated claim against Beverly Meadows, Trustee of 166 Middle Road Realty Trust in the sum of $7,500. He described the claim as follows:

> On or about September 20, 2002, the Debtor transferred several parcels of real estate located in New Port Richey, Florida to Beverly Meadows as Trustee of the 166 Middle Road Realty Trust in consideration of the outstanding mortgages on the properties plus a future payment equal to any equity in the properties at the time of transfer less the cost to repair the properties. The agreement with the Trust is that it, together with a management company it engages, will determine the value, the equity and the costs of repair. Thereafter, the trust will send a check. That check could be anywhere between $5,000 and $25,000 although the Debtor believes the amount will be closer to $5,000. The amount of value listed is an estimate by the Debtor.

In response to Question 10 on the Statement of Financial Affairs, which requires disclosure of property transferred within one year of the petition date either absolutely or as security, the Debtor disclosed the transfer of four properties located in New Port Richey, Florida to Beverly Meadow, Trustee, including 5746 Dahlia Drive, 7448 Cypress Drive, 4016 Wiggins Drive and 4914 Durney Street. He stated: "Properties were transferred in consideration of outstanding mortgage balances. Mortgages are still outstanding and are listed on Schedule D." At the December 18, 2002 §341 meeting, the Debtor stated that Ms. Meadows "bought

9

them [the properties] for the value of the mortgages and then she
has to have them – – she has a management company now appraising
them and seeing what they're worth." When asked by the Trustee,
"Why is it in her best interest [to pay the mortgages on the
properties transferred to her], I mean what – – is she out a
nickel on this transaction?" the Debtor stated: "She assumed the
debt and she's going to have the equity in the house after
they're valued. That will be her benefit."

On an amended Schedule B filed on January 29, 2003, the
Debtor amended his contingent and unliquidated claim against
Beverly Meadows, increasing it from $7,500 to $23,244.64. In
response to Question 10 on the Statement of Financial Affairs, he
added six additional properties to the list of properties in New
Port Richey, Florida, which he had transferred to Beverly Meadows,
Trustee of the 166 Middle Road Realty Trust. On March 3, 2002,
less than one week after the Trustee filed an adversary
proceeding against the Debtor, and Beverly and Michael Meadows as
Trustees of the 166 Middle Road Realty Trust, and "[a]s a result
of a title search performed by the Trustee," the Debtor again
amended his response to Question 10 to include "forgotten
transfers."

In the Trustee's Complaint to Avoid Post-petition Transfers,
the Trustee sought to avoid ten post-petition transfers of real
property located in Florida. Additionally, she filed a Motion
for a Preliminary Injunction through which she sought to enjoin
the Defendants from conveying, encumbering, or otherwise

10

transferring any legal or equitable interest in the ten
properties.

Beverly and Michael Meadows in their capacity as Trustees
of the 166 Middle Road Realty Trust filed an Opposition to the
Trustee's Motion for a Preliminary Injunction in which they
maintained that the Trust became the owner of the properties on
September 30, 2002, although the deeds to the properties were not
recorded until after the Debtor filed his bankruptcy petition.
Additionally, they represented that they paid the Debtor the
initial sum of $50,000 on August 10, 2002. The check in the sum
of $50,000 was submitted in evidence. It bears the notation,
"down pmt for 15 houses Florida." The back of the check bears
the Debtor's signature.

On March 14, 2003, the Debtor filed his third amendment to
his Statement of Financial Affairs, this time for the purpose of
disclosing the $50,000 check received on or about August 10,2002.
In the Motion to Amend, the Debtor stated that he "misunderstood
the question and believe [sic] that it meant net income. The
Debtor also derived gross rental income from those properties
prior to the sale and within one year of the Petition Date and he
wishes to amend Question 2 further to show that income which was
approximately $80,050 in gross income against expenses of
$131,200 for a negative loss of $50,350."

At his December 18, 2002 §341 meeting, the Debtor testified
that he had two bank accounts, one at Citizens Bank and the other
at Eastern Bank. Although the Debtor eventually provided some

11

information about the accounts to the Trustee, neither was listed on Schedule B.  The Debtor did not amend Schedule B to list these two accounts until after the trial.

Approximately one month after the Debtor filed his third amendment to his Statement of Financial Affairs, the Trustee commenced this adversary proceeding.  During the trial, the Debtor testified that he did not intend to conceal or make false statements. He defended the Trustee's complaint on grounds that his omissions were inadvertent or based upon misunderstandings.

## V.   SUMMARY OF ARGUMENT

The Debtor respectfully asserts that the Bankruptcy Court should not have entered an order denying his discharge under 11 U.S.C. Section 727(a)(4) which was Count III of the Trustee's Complaint, alleging false oaths by the Debtor on his Schedules and Statement of Financial Affairs and at the Section 341 meetings.

The Debtor respectfully states that by virtue of various amendments to the Schedules and Statement of Financial Affairs, the majority of which were filed with and approved by the Court without objection by the Trustee prior to the filing of the adversary proceeding cured any inadvertent omission in the original schedules and as a matter of law should not have resulted in the barring of the Debtor's discharge.

12

## VI.   APPLICABLE STANDARD OF REVIEW

Findings of fact, whether based on oral or documentary evidence, should not be set aside unless clearly erroneous.  Rule 8013 of the Federal Rules of Bankruptcy Procedure.  This Court decides conclusions of law on a de novo basis.  Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1993); In Re SPM Mfg. Corp., 984 F.2d 1305 (1st Cir. 1993).

## VII.   ARGUMENT

"As the Trustee acknowledges, Rule 1009(a) states that the Debtors may amend their schedules "as a matter of course" anytime before the case is closed."  In Re Arnold, 252 B.R. 784 (9th Cir. BAP [Cal.] 2000) citing In Re Michael, 163 F.3d 526 [C.A. Mont. (1998)].

Bankruptcy Rule 1009(a) provides: "a voluntary petition, list or statement may be amended by the Debtor as a matter of course (emphasis added) anytime before the case is closed." Bankruptcy Rule 1009(a), citing In Re Kahan, 28 F.3d 79, 81 (9th Cir. 1994)

No Court approval is required for an amendment, which is liberally allowed.  In Re Doan, 672 F.2d 831, 833 (11th Cir. 1982) In Re Michael, supra p.529.

The following language is quoted from In Re Sullivan, 204 B.R. 919 (Bankr.N.D.Tex.1997) ... "the Court may find however

13

that "the existence of more than one falsehood, together with the
Debtor's failure to take advantage of the opportunity to clean up
all inconsistencies and omissions when he filed his amended
Schedules, constituted a reckless indifference of the truth and
therefore the requisite intent to deceive."   In Re Sullivan,
supra p.942.

In the Sullivan case, the Court noted that amended
Schedules and Statements were filed long after the original
Schedules and Statements and did not correct many errors in the
original Statement and Schedules.   In Re Sullivan, supra p.943.

In the Sullivan case, the original Schedules and Statement
of Financial Affairs were signed on March 4, 1991 and filed on
March 5, 1991.

On June 29, 1993, in excess of 2 years after the original
Schedules and Statement of Financial Affairs, Mr. Sullivan signed
and filed amended schedules and amendments to the statement of
financial affairs.   There was no such significant delay in this
case by Mr. Vasiliades.   In Sullivan, the filing of the
amendments to the statement of financial affairs and schedules
was well after the commencement of the litigation that resulted
in the denial of his discharge.   The Sullivan Court found that
the amended schedules contained an extraordinary number of
omissions and inaccuracies.   In Re Sullivan, supra p.928.

In Sullivan, the Court found that Sullivan used the time
between the filing of his original schedules and statement of
financial affairs and the amended schedules and statement of

14

financial affairs, nearly two years later, in order to alter or to have altered his books and records so as to conceal even more inaccuracies and omissions.

"His conduct with respect to the preparation of the original and amended Schedules and Statements constituted a pattern of intentional omissions, misstatements and deceit." In Re Sullivan, supra p.938.

In this case, all amended Schedules and/or Statement of Financial Affairs with two exceptions were filed prior to the filing of the 11 U.S.C. 727 complaint and the amended documents filed prior to commencement of the adversary proceeding were approved by the Bankruptcy Court, without objection by the Trustee. In the Sullivan case, the adversary proceeding was filed on February 13, 1992, approximately 17 months prior to the filing of amended schedules and statement of financial affairs.

The case of In the Matter of Beaubouef, 966 F.2d 177 ([C.A. 5] 1992) held the following ... "The Bankruptcy Court correctly noted that a discharge cannot be denied when items are omitted from the schedules by honest mistake." See Collier on Bankruptcy, 15th Ed. Rev., Vol. 4, ¶727.04 [1A]. "However, the Bankruptcy Court found that the existence of more than one falsehood, together with Ronald's failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules, constitutes reckless indifference to the truth and, therefore, the requisite intent to deceive." Citing In Re Sanders, 128 B.R. 963, 972 (Bankr.W.D.La. 1991).

In the Beaubouef case, the amended schedules were not filed by the Debtor until six months after being questioned during his Rule 2004 examination.   In Re Beaubouef, supra p.181.

The case of In Re Sanders, supra, also implies that had the debtors filed timely, more accurate schedules and statement of financial affairs that perhaps a successful cause of action under 11 U.S.C. Section 727(a)(4) would not have been available.

See also the case of In Re Porter, 276 B.R. 32 (Bankr.D.Mass. 2002) where Bankruptcy Judge Kenner, in the context of the request of the Debtor to convert from Chapter 7 to Chapter 13, made the following statement:

> "The Debtor did not correct that misstatement until after the Chapter 7 Trustee had sought out and established the truth and commenced adversary proceedings to deny the Debtor a discharge and to recover the property, and only then did the Debtor propose to convert to Chapter 13."

The clear implication of that language is had the debtor in Porter immediately sought to amend his schedules and statement of financial affairs prior to any action by the Chapter 7 Trustee, that any such misstatement might have been judged as an honest mistake as opposed to grounds for finding bad faith and denying the request to convert to Chapter 13.   In this case, various amendments to schedules and statement of financial affairs were filed with the Court.   Motions to approve same were not subject to objection by the Trustee and were approved by the Court.

See also In Re Dolata, 306 B.R. 97, 149 (Bankr.W.D.PA. 2004) which stated:

16

"Although subsequent voluntary disclosure through testimony or an amendment to the schedules cannot expunge the falsity of an oath, subsequent disclosures are evidence of innocent intent."  "The fact that the property in question was included in the debtor's amended petition does not excuse its original omission."  Such subsequent disclosures, however, shall not evidence innocent intent if no adequate explanation has been offered as to why these items were left off the original petition.  In Re Dolata, supra p.149.

The Debtor provided adequate explanation as to why various items were omitted from the original petition.

See also the case of In Re Wilson, 290 B.R. 333, 339 fn 1, where the Court stated that "the Debtor had the opportunity to diffuse the false omission in his Statement of Financial Affairs by correcting it through his testimony at the first meeting. Unfortunately he made another bad choice and failed to take advantage of that opportunity."  Explicit in that comment is that had the debtor corrected his testimony at the 341 meeting, which is analogous to the amendments filed in this case, that a successful 11 U.S.C. 727 complaint would not have resulted.

"The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor.  Collier on Bankruptcy, 15th Ed. Rev., Vol. 6, p.727-12, ¶727.02 [1] Commerce Bank & Trust Co. v. Burgess (In Re Burgess), 955 F.2d 134 (1st Cir. 1992).  Courts have noted "that a total bar to discharge is an extreme penalty" and the reasons for denial of a discharge must be real and substantial rather than technical and conjectural.  Collier on Bankruptcy, supra, p.727-12 and Commerce Bank and Trust Co. v. Burgess, supra.

The burden of proving a ground for objection to discharge is on the objector.  Most courts have held that this burden may be met under a preponderance of the evidence standard.  Collier

on Bankruptcy, Vol. 6, 15th Ed., p.727-8, § 727.01 [2], <u>Peterson</u>
<u>v. Scott</u> (<u>In Re Scott</u>), 172 F.3d 959 (7th Cir. 1999).

In this case, the Debtor testified he was not intending to
commit a false oath.  Trial transcript[3] p.83, lines 18-23, TT
p.86, lines 7-9.  The Trustee's exhibit 4[4] sets forth four
amendments to the Schedules and Statement of Financial Affairs.
These documents were filed on January 29, 2003, March 3, 2003,
and March 14, 2003 by prior counsel to the Debtor and on October
14, 2004 by successor counsel to the Debtor.

Subsequent to the trial, after the undersigned successor
counsel was provided on the day of trial with certain of the
documents that had been delivered by the Debtor to the Trustee at
the second 11 U.S.C. 341 meeting in January of 2003, it became
apparent that the accounts evidenced by said bank statements had
not been scheduled even though those bank accounts had no balance.
In addition, successor counsel noted that the responses to
Question 20 of the Statement of Financial Affairs did not
indicate the Debtor's interest in New England Property Services
and Construction Inc. (hereinafter the "Corporation") which
information had been inadvertently omitted from prior amendments.
Therefore, the Debtor, with the assistance of and based upon the
advice of successor counsel, submitted a document entitled Third
Notice of Amendment to Schedules and Fourth Notice of Amendment

---

[3]  The Trial Transcript, which is included in the record on appeal will
be hereinafter referred to as TT.

[4]  All trial exhibits are included in the record on appeal.

to Statement of Financial Affairs to address these inadvertent oversights.

The initial draft of the Schedules was prepared by the Debtor at his home using forms that were given to him by prior counsel.  TT p.62 lines 8-25, p.63 lines 1-5.  The Debtor stated he did not meet with prior counsel to review the initial schedules prior to signing.  TT p.64 lines 9-13.

The Debtor's misunderstanding of his interest in the Corporation is readily explained in the preparation of the initial schedules.  The Debtor testified that the Corporation was basically formed for the benefit of Mr. Michael Grasso.  TT P.77 lines 24-25, p.78 and p.79 lines 1-3.  The Debtor testified he had no active involvement in the day to day business operations of the Corporation and indicated that he did not think about the Corporation in preparing the initial schedules by himself.  TT p.81 lines 1-9, TT p.83 (entire page), TT p.102, lines 1-16.  The Debtor testified that he never went to the office of the Corporation.  TT p. 89 lines 8-9.

In addition, the Debtor testified that he was not aware from either 11 U.S.C. 341 meeting that the Trustee was seeking any documentation relative to the Corporation, such as his bank statements and cancelled checks.  TT p.71 lines 19-23.  The Debtor described his efforts to obtain said documents once he became aware said documents were sought by the Trustee.  TT p.72 lines 2-10.  The Trustees exhibit 9 clearly indicates that these documents were forwarded on November 19, 2003 and should not be a

19

basis for an accusation of concealment of assets.  The Debtor
testified that he had not been directly requested to turn over
these records by the Trustee.  TT p.71 lines 19-23.

The Debtor testified that he did not intentionally conceal
any information regarding the $50,000.00 payment by failing to
list this amount as income for the year in which it was received
because he did not believe it was income for said year.  TT p.86
lines 23-25, p.87 entirely, p.88 lines 1-4.  This
misunderstanding was corrected via amendment.

"A debtor may be denied a discharge by virtue of Section
727(a)(4)(a) if he or she "knowingly and fraudulently, in
connection with the case made a false oath or account".  Collier
on Bankruptcy, supra, p.727-39 ¶727.04[1][a].  Under Federal Rule
of Bankruptcy Procedure 4005, the plaintiff has the burden of
proof of the elements necessary to sustain the charge of false
oath.   The false oath must have been knowingly and fraudulently
made".   Collier on Bankruptcy, supra, p.727-39, ¶727.04[1][a]
Commerce Bank and Trust v. Burgess, supra.  The analysis ... of
what constitutes intent to defraud with respect to section
727(a)(2) is largely applicable to 727 (a)(4)."  Collier on
Bankruptcy, supra, p.727-39, ¶727.04[1][a].

"A reckless disregard of both the serious nature of the
information sought and the necessary attention to detail and
accuracy in answering may rise to the level of fraudulent intent
necessary to bar a discharge."  Collier on Bankruptcy, supra,
p.727-40, ¶727.04[1][a].  "However, a false statement resulting

20

from ignorance or carelessness is not one that is knowing or fraudulent." Collier on Bankruptcy, supra, citing Boroff v. Tully (In Re Tully), 818 F.2d 106 (1st Cir. 1987) and Desmond v. Varasso (In Re Varasso), 37 F.3d 760 (1st Cir. 1994).

The case of In Re Varasso, (Desmond v. Varasso)[5] 37 F.3d 760 (1st Cir. 1994) was decided in the context of a motion for summary judgment barring the discharge of the debtors, which Motion had been granted by the Bankruptcy Court and affirmed by the District Court. The Court of Appeals for the First Circuit vacated this judgment and remanded the case to the District Court with instructions that the Bankruptcy Court's order be vacated and remanded to the Bankruptcy Court for further proceedings. It is interesting to note, in the Varasso case, the following language:

> "Here, the undisputed facts conclusively demonstrated the omission of certain assets from the Schedules, but, beyond that, the facts are consistent either with an inference of deliberateness or an inference of carelessness." In Re Varasso, supra, p.766.

Clearly the First Circuit Court of Appeals has acknowledged that a finding of carelessness would not be sufficient to bar a discharge under 11 U.S.C. Section 727.

There were various oversights and perhaps some degree of carelessness in preparing the documents but this should not be

---

[5] Curiously, the Varasso case which is analogue to this case and which was discussed in the Appellant's trial brief and which was decided seven years after Boroff v. Tully was apparently ignored by the Bankruptcy Court.

grounds for the serious remedy of barring his discharge.  He had

no intention to conceal information or submit a false oath.  This

is clearly indicated by the Debtor attending a second 11 U.S.C.

341 meeting, waiting several hours until he was called, providing

information he believed was required by the Trustee and stating

he would speak to his counsel regarding amending certain

documents.  TT p.127 lines 16-25.  (See also Plaintiff's Exhibit

2 transcript of continued 11 U.S.C. 341 meeting dated January 8,

2003 pages 27 through 29.)  The Trustee expected that amended

schedules would be filed (which they were) and the Debtor was

justified in believing that, with those amendments, the Trustee's

request for documents would be satisfied.

> "But if the items were omitted by mistake or upon honest
> advice of counsel, to whom the debtor had disclosed all the
> relevant facts, the declaration will not be deemed
> willfully false, and the discharge should not be denied
> because of it.  A debtor coming forward on his or her own
> accord to correct an omission is strong evidence that there
> was no fraudulent intent in the omission." Collier on
> Bankruptcy, supra, p.727-42, ¶727.04 [2].  See In the
> Matter of MU.S.C.ola, 505 F.2d 274, 277 (1st Cir. 1994)
> which held, inter alia, that explanation by a bankrupt that
> he had acted upon advice of counsel who in turn was fully
> aware of all the relevant facts generally rebuts an
> inference of fraud."

The case of Boroff v. Tully, supra, is the seminal case in

the First Circuit relative to denials of discharge for false

oaths.  The First Circuit held that "the statutory right to a

discharge should ordinarily be construed liberally in favor of

the debtor".  In Re Tully, supra, p.110.  "The reasons for

denying a discharge to a bankrupt must be real and substantial,

22

not merely technical and conjectural." In Re Tully, supra, p.110.
The following language from Tully is instructive

> "Nor can an attorneys willingness to bear the burden of
> reproach provide blanket immunity to a debtor; it is well
> settled that reliance upon advice of counsel is, in this
> context, no defense where it should have been evident to
> the debtor that the assets ought to be listed in the
> schedules ..." "A debtor cannot, merely by playing ostrich
> and burying his head deeply enough in the sand, disclaim
> all responsibility for statements which he has made under
> oath. " In Re Tully, supra, p.111

The facts in Tully are much more egregious than in this
case. In Tully, all undisclosed assets appeared to have value,
one of which was never disclosed in amended schedules. Unlike,
Tully the amended schedules in this case were done promptly.

> In this instance, the Trustee's prima facie case was made
> out beyond the shadow of a doubt. John Tully had full
> knowledge of the intricacies of the joint venture deal. He
> was a principal in it, and helped to put it together. The
> arrangement was of recent origin. Yet, he neglected to
> list three significant assets in the original Schedules,
> omitted two of those assets in the first amended set of
> Schedules later – after he had been grilled at the §341
> creditors meeting – listed the Notes in a second amended
> set of Schedules, and never listed the holdback at any time
> in any Schedule. These omissions could certainly be styled,
> prima facie, as knowing and fraudulent – and they were
> indubitably material. Boroff v. Tully, supra, p.110.

See also In Re Grondin, 232 BR 274, 280 (Footnote 7) (1st
Cir. B.A.P. (NH) 1999) citing the following language from
Gillickson v. Brown, (In Re Brown), 108 F.3d 1290, 1295 (10th Cir.
1997) which stated that "the fact that the debtor comes forward
with omitted material of his own accord is strong evidence that
there is no fraudulent intent." Clearly, the Debtor, by

23

appearing at a continued 11 U.S.C. 341 meeting without his counsel, being at that meeting for what appears to be a period in excess of five hours and providing all the documents that he believed the Trustee requested has not indicated any intent to conceal or to commit a false oath.

An examination of Plaintiff's Exhibit 4 indicates that there was no false intent in submitting the original or amended schedules.   Docket entries 18 and 17 indicate an amended Schedule B in order to add the stock ownership in the Corporation, to amend Schedule B-20 relative to funds due from Beverly Meadows, as well as to amend question 10 of the Statement of Financial Affairs to indicate the transfer of ten properties within one year.   These documents were filed with this Court on January 29, 2003.   There was no objection to the Motion of Debtor to Amend Schedules which is docket entry 18.

Docket entry 32 is entitled Second Motion of Debtor to Amend Schedules which was dated and filed on March 3, 2003.   This docket entry is actually a further amendment to question 10 of the Statement of Financial Affairs relative to the Florida properties.

Paragraph 3 of docket entry 32 states

3) As a result of a title search performed by the Trustee it was disclosed that there were other transfers within one (1) year of the Petition Date which the Debtor did not recall and the Debtor wishes to amend his response to question 10 of the Statement of Affairs to include those forgotten transfers.   The Debtor believed that the transfer in question had occurred well before the date of recording of the deeds and prior to a period of one year before the Petition Date (emphasis added).

24

An attached list on Second Amended Statement of Affairs was added. There was no objection filed to this Second Motion to Amended Schedules.

Docket entries 36 and 37 are entitled Second Motion of Debtor to Amend the Statement of Financial Affairs (docket entry 37) and Amended Statement of Financial Affairs (docket entry 36) which were filed to correct the Debtor's misunderstanding regarding his income in Question 2 of the Statement of Financial Affairs. This document was filed on March 14, 2003. These three documents were filed by prior counsel to the Debtor well in advance of the filing of the 11 U.S.C. 727 complaint. There were no objections filed to any of the aforementioned docket entries by the Trustee.

The Notice of Amendment of Schedules and Third Amendment to the Statement of Financial Affairs was submitted by the undersigned successor counsel to the Debtor to add litigation filed by an alleged creditor, of which the Debtor was not aware until well after the filing of the Bankruptcy Case. The Debtor was not aware of this claim or litigation until having been served with same subsequent to the filing of the Bankruptcy Case. In the same document, the Debtor added to the Statement of Affairs, the income he received in 2002 from the Corporation.

Subsequent to the trial, on or about December 16, 2004 and based upon advice of successor counsel, a Third Notice of Amended Schedules and Statement of Financial Affairs was filed to add two bank accounts at Citizens Bank and Eastern Bank. Statements

regarding each account were delivered to the Trustee in January
of 2003 at the continued 11 U.S.C. 341 meeting. Neither account
had a balance. Successor counsel only became aware of these
accounts one day before the trial of this Complaint. The Debtor
also informed successor counsel that based upon recent notices
from the Internal Revenue Service (IRS), it was possible that the
IRS may be asserting a disputed claim. Also in preparing for
trial, successor counsel noticed that question 18 of the
Statement of Financial Affairs inadvertently had not disclosed
that he was an officer of the Corporation even though the stock
interest of the Corporation had been disclosed in docket entry 18.

The majority of the deficiencies in the Schedules and
Statement of Financial Affairs were all remedied by amendments
that were filed well prior to the Complaint and after two 11
U.S.C. 341 meetings.

The Trustee spent significant time at the trial relative to
what Trustee categorized as the missing Florida properties which
are indicated by Plaintiff's Exhibit 10. See TT p.44 lines 12-25,
p.45, 46, 47, 48, 49, 50, 51 in their entirety and p.52 lines 1-7.
An attachment which was part of Tab 3 of Plaintiff's Exhibit 4
was included in the Second Motion to Amend, which Second Motion
was not subject to objection by the Trustee. Said attachment, as
indicated below, included these properties.

In addition, the Debtor made it clear in this amendment
that he was uncertain and did not believe that these transfers
took place within one year of the filing of the Bankruptcy Case.

Plaintiff's Exhibit 6 contains various documents including an Affidavit by a Florida real estate attorney named Constantine Kalogianis.  Paragraph 4 of that Affidavit indicates the following

> "Under Florida Law, title passes (and the deed is effective) when the deed is delivered to purchaser.  This is regardless of when the deed is recorded in the public records."

T.T. Pages 94 through 100, in their entirety, address the deficiencies in the Trustee's assertion that the three deeds evidenced by Exhibit 10 proves by a preponderance of the evidence that these transactions took place within one year of the bankruptcy and were not disclosed.[6] The Debtor testified that while it was his signature on all three deeds, his signature was not dated, he had no recollection of the exact date of signing the documents and he did not initial the first page of any documents in Exhibit 10.  One of the documents was notarized on December 24, 2001 for a deed that was dated December 27, 2001. Another deed was notarized on November 2, 2001, relative to the first page of a deed that was dated December 21, 2001.  There is no evidence when the deed was delivered to the purchaser of these three properties.  Coupled with the fact that said properties were listed in the Second Motion to Amend, the Trustee did not prove by a preponderance of the evidence that these three properties should be the basis to bar the Debtor's discharge.

---

[6]    The first time that successor counsel to the Debtor was provided copies of Plaintiff's Exhibit 10 was the day before the trial.

Finally, a comparison of the information in Plaintiff's Exhibit 10 to the attachment to docket entry 32 (Tab 2 of the Plaintiff's Exhibit 4) shows that the information regarding these three properties was disclosed prior to the filing of the Complaint. The last page of docket entry 32 contains circled and checked information which match the recording information of Plaintiff's Exhibit 10.

As indicated by the aforementioned case law, amendments to Schedules and Statement of Financial Affairs can cure any finding of a reckless indifference to the truth and the reckless intention to deceive. On page 14 of the Memorandum of Decision, the Court made the following statement:

> "His conduct undermined "the successful functioning of the Bankruptcy Act" because he was not truthful and was unwilling to make a full disclosure at the outset (emphasis added by Court) of the proceedings."

This statement is incorrect as a matter of law because amendments to Schedules should be liberally allowed and can take away the sting of any initial inadvertent, incorrect disclosures. In this case, there were three separate motions to amend schedules and/or statement of affairs all of which were allowed by the Court after no opposition by the Trustee. The Bankruptcy Court made an error of law when it found that the problems with the Schedules and Statement of Financial Affairs at the outset were sufficient to bar the discharge of the Debtor. The Court should be estopped from making such a finding based upon its

28

approval of three amendments to the Schedules and/or Statement of
Affairs.

The Chapter 7 Trustee, who was aware of the two bank
accounts at Eastern Bank and Citizens Bank with minimal or no
balances, did not include the failure to list the bank accounts
as a basis upon which to deny his discharge. Therefore, the
Court was incorrect including an element that was not requested
by the Trustee.

As indicated in a previous footnote, the Bankruptcy Court
did not discuss the case of In Re Varasso, supra. The Varasso
decision, which was approximately seven years after the decision
of In Re Tully, supra, clearly indicates that an inadvertent
mistake is not necessarily a basis to bar the Chapter 7 discharge.
The Bankruptcy Court should not have ignored the effect of
Varasso.

Neither the Local Rules of Bankruptcy Procedure of
Massachusetts nor the Federal Rules of Bankruptcy Procedure
require the approval of amendments to Schedules and Statement of
Affairs. A motion to approve the amendments were filed by the
Debtor and allowed by the Court. The Court in its decision
essentially overruled those orders, which were final orders.
This was incorrect as a matter of law.

CONCLUSION

The decision of the Bankruptcy Court should be reversed and the Chapter 7 discharge of the Debtor should enter.

                              Respectfully submitted,
                              George J. Vasiliades
                              By his Successor Counsel,


Dated: May 31, 2005
                              Gary W. Cruickshank, Esq.
                              21 Custom House Street
                              Suite 920
                              Boston MA   02110
                              (617) 330-1960
                              (BBO107600)
                              gwc@cruickshank-law.com


CERTIFICATE OF SERVICE


I, Gary W. Cruickshank, hereby certify that a copy of the foregoing Trial Brief has been served, unless otherwise noted, via regular United States mail, postage prepaid, upon Kathleen Dwyer, Atty., MacLean, Holloway, Doherty, Ardiff & Morse, Chapter 7 Trustee, 8 Essex Center Drive, Peabody, Massachusetts 01960 (electronically).


Dated: May 31, 2005
                              Gary W. Cruickshank, Esq.