UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| GEORGE J. VASILIADES, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| | )    Civil Action No. |
| v. | )    05-10479-FDS |
| | ) |
| KATHLEEN DWYER, TRUSTEE, | ) |
| | ) |
| Appellee. | ) |

---

MEMORANDUM AND ORDER ON DEBTOR'S
APPEAL FROM ORDER OF UNITED STATES BANKRUPTCY COURT

SAYLOR, J.

George J. Vasiliades ("Debtor") brings this appeal pursuant to 28 U.S.C. § 158(a) challenging a final order by the United States Bankruptcy Court for the District of Massachusetts denying his discharge in favor of the Chapter 7 Trustee, Kathleen P. Dwyer (the "Trustee"). On April 18, 2003, the Trustee filed a five-count complaint against the Debtor seeking the denial of his discharge pursuant to 11 U.S.C. § 727. Following a trial in November 2004, Bankruptcy Judge Joan N. Feeney entered a final judgment on January 20, 2005, in favor of the Trustee on one count and denied the Debtor's discharge on the grounds that he knowingly made a false oath in violation of § 727(a)(4)(A). This appeal followed.

I.    **Background**

Because both parties have adopted the Bankruptcy Court's findings of fact, the Court will adopt them insofar as they are supported by the record and not clearly erroneous.

On November 14, 2002, the Debtor filed a voluntary Chapter 7 petition on behalf of himself and a Chapter 11 petition as president of A. George Company, Inc. ("AGC"). The Debtor

contends that AGC is a successor to an unincorporated business he operated called Olympic Painting. He has used the name "Olympic" in various business endeavors for many years. The Bankruptcy Court converted the Chapter 11 case of AGC into a Chapter 7 case on January 26, 2004.

The Debtor is well-educated, holding a bachelor's degree in engineering and a master's degree in finance. He filed the Schedules and Statements of Financial Affairs required by Fed. R. Bankr. P. 1007(b) on December 13, 2002.[1] On his Schedule B–Personal Property, the Debtor disclosed common stock ownership in AGC valued at $1.00. On his Statement, the Debtor disclosed gross income from his employment at AGC of $50,000 in 2000, $78,000 in 2001, and $65,000 in 2002. In its Statement, AGC reported 2002 earnings of approximately $2 million.

The Debtor also listed a contingent and unliquidated claim against Beverly Meadows, Trustee of 166 Middle Road Realty Trust ("Realty Trust"), for an estimated $7,500. This claim arose from the September 20, 2002, transfer of four properties in New Port Richey, Florida, to Beverly Meadows.[2] The Debtor stated that the Realty Trust assumed the outstanding mortgages on these properties in exchange for "the equity in the house after they're valued."[3]

---

[1] The Debtor testified at trial that he mailed the Schedules and Statement, which he signed on December 12, 2002, to attorney Thomas Raftery for filing with the Bankruptcy Court. Raftery, however, testified that he was out of town at the time and that the Debtor filed the documents himself. The more important inconsistency, however, is whether Debtor knew that the information contained therein was provided under oath. At that first § 341 meeting, the Debtor testified that the information in the Schedules and Statement was true and complete, and that Raftery assisted him in their preparation. At trial, however, the Debtor testified that he did not read the language regarding the penalty for a false statement, and that his attorney did not advise him of the oath or its consequences.

[2] Beverly Meadows (a former business associate of the Debtor) and Michael Meadows are Trustees of the 166 Middle Road Realty Trust. Because there is no indication that Beverly or Michael Meadows is involved in this matter in an individual capacity, this memorandum will simply refer to the "Realty Trust."

[3] The Debtor testified at the first § 341 meeting that he had several rental properties in Florida valued between $30,000 and $40,000 that he had difficulty selling, and that the Realty Trust assumed the mortgages.

The Chapter 7 Trustee held a meeting of creditors pursuant to 11 U.S.C. § 341(a) on December 18, 2002. The Debtor was represented by attorney Thomas Raftery at the meeting. The Debtor's testimony at this meeting was largely consistent with the information he provided in his original Schedules and Statement.[4]

The Trustee conducted a second § 341 meeting on January 8, 2003, at which the Debtor did not have counsel present.[5] At that meeting, the Trustee questioned the Debtor about his association with New England Property Services & Construction, Inc. ("New England Property"), an entity that she discovered for the first time during a title search conducted at the Office of the Secretary of State. The Debtor acknowledged that he was the president of the corporation and that it had been formed within the past year.[6] The Debtor provided inconsistent explanations for the omission of New England Property from his Schedules. Initially, he stated that the idea for the company originated with Mike Grasso, a former employee of AGC who "wanted to start his own little business."[7] The Debtor then stipulated that the corporation was "actually part of A. George Company," and that he wanted to be the president so that in the event "it ever took off it would be under A. George Company." Ultimately, he testified that New England Property was "idle," and acknowledged that "[m]aybe [he] should list it there." A chart in the Bankruptcy

---

[4] At the first § 341 meeting, the Debtor mentioned two bank accounts that he held, one at Citizens Bank and the other at Eastern Bank. Neither of these accounts was listed on Schedule B. While the Debtor did eventually provide the Trustee with some information on the accounts, he did not amend Schedule B with regard to the accounts until after trial.

[5] Raftery was absent due to illness. The Bankruptcy Court granted Raftery's motion to withdraw as counsel on October 20, 2003. He was succeeded by attorney Gary W. Cruickshank.

[6] New England Property was incorporated on February 25, 2002.

[7] Michael C. Grasso acted as director, treasurer, and clerk of New England Property.

Court's findings reveals that New England Property was not idle in the months prior to the Debtor's petition. Between June 10 and November 6, 2002, New England Property issued checks to the Debtor, AGC, and Olympic Painting totaling $10,248.73.

On January 29, 2003, the Debtor amended Schedule B to reflect three significant changes. First, he increased the amount of his claim against the Realty Trust from $7,500 to $23,244.64. He also added six Florida properties to the list of transfers to the Realty Trust, for a total of ten. Finally, the Debtor disclosed stock ownership valued at $50.00 in New England Property.[8] He did not, however, report any income at that time.

The Trustee filed a Complaint to Avoid Postpetition Transfers against the Debtor and the Realty Trust on February 27, 2003. She moved for a preliminary injunction the same day, seeking to enjoin the Debtor and the Realty Trust from "conveying, encumbering, or otherwise transferring any legal or equitable interest in the ten properties."

On March 3, 2003—more than one month after he amended Schedule B to include the six omitted transfers of real estate to the Realty Trust—the Debtor amended his Statement to reflect the same. This amendment was filed less than one week after the Trustee moved for a preliminary injunction.

The Realty Trust filed an opposition to the Chapter 7 Trustee's Motion for Preliminary Injunction on March 17, 2003. Although the deeds to the Florida properties were not recorded until after the Debtor filed his bankruptcy petition, it claimed that the Realty Trust actually

---

[8] The amended Schedule B estimates the market value of the stock as "minimal" and states that the "company sells painting jobs and then subcontracts them. The company has no equipment."

acquired ownership on September 30, 2002.[9]  Attached to the opposition was a copy of a check

for $50,000 dated August 10, 2002, and bearing the notation "down pmt 15 houses Florida."[10]

The check was endorsed by the Debtor.

On March 14, 2003, the Debtor amended his Statement to include the $50,000 check he

received from the Realty Trust.  He attributed this omission to his "misunder[standing of] the

question and belie[f] that it meant net income."  In addition, he explained that the $80,850 in

gross income that he was now reporting was offset by expenses of $131,200, for a net loss of

$50,350.  Notably, the Debtor made this disclosure after the existence of the $50,000 check was

revealed in the adversary proceeding.

On April 18, 2003, approximately one month after he filed his third amendment, the

Trustee filed a complaint against the Debtor seeking denial of his discharge under 11 U.S.C. §

727(a)(2), (3), (4)(A), (4)(D), and (5).

On October 14, 2004, the Debtor amended his Schedules and Statement for a fourth time.

The new Statement added $10,000 of 2002 income from New England Property.  The Debtor

also added Amica Mutual Insurance Company as a creditor; Olympic Painting & Roofing

Company was involved in litigation with Amica in the Taunton District Court.  The amount of the

claim was reported as $4,320.

A trial was held on November 30, 2004.  The Bankruptcy Court took judicial notice that

the Debtor amended Schedules B and E approximately two weeks after trial, on December 16,

---

[9] The deeds were executed on September 20, 2002.  The Realty Trust took ownership that day.  It was not until the Debtor's bankruptcy proceedings that the Realty Trust learned that the deeds were not properly recorded.

[10] In addition to the ten properties the Realty Trust purchased from the Debtor, it simultaneously purchased five properties from the Debtor's father.

2004.  The Court ruled in favor of the Trustee on the § 727(a)(4)(A) count, and deemed it unnecessary to address the three remaining counts.[11]  The Debtor commenced this action on March 3, 2005.

## II.    Standard of Review

The district courts have jurisdiction over appeals from final judgments, orders, and decrees by bankruptcy judges serving within their judicial districts.  28 U.S.C. § 158(a).  The Court may affirm, modify, or reverse a bankruptcy judge's decision, or remand with instructions for further proceedings.  Fed. R. Bankr. P. 8013.  Findings of fact will not be set aside unless they are clearly erroneous.  *Id*.  Moreover, "due regard" must be afforded the bankruptcy judge's ability to assess the credibility of witnesses.  *Id*.  Conclusions of law are reviewed *de novo*.  *In re Ballarino*, 180 B.R. 343, 346 (D. Mass. 1995) (citing *In re LaRoche*, 969 F.2d 1299, 1301 (1st Cir. 1992)).

A party objecting to the discharge of a debtor under 11 U.S.C. § 727(a)(4) must establish the following elements by a preponderance of the evidence:  (1) the debtor made a false oath or account; (2) the debtor did so knowingly and fraudulently; and (3) the misstatement must be material.  *See In re Hayes*, 229 B.R. 253, 259 n.7 (B.A.P. 1st Cir. 1999) (citing *Grogan v. Garner*, 498 U.S. 279, 289-91 (1991) (internal citations omitted); *In re Varrasso*, 37 F.3d 760, 764 (1st Cir. 1994) (citing *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987)); Fed. R. Bankr. Pro. 4005.  Once the objecting party satisfies its initial burden, "the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged."  *In re Tully*, 818 F.2d at 110 (quoting *In re Mascolo*, 505 F.2d 274, 276 (1st Cir. 1974)).

---

[11] The Court did note, however, with respect to Count I (for concealment of assets) that "the evidence is equally compelling."  The Trustee orally waived Count V at trial.

Here, the Bankruptcy Court concluded that the Debtor failed to produce evidence sufficient to overcome the Trustee's showing. While the ultimate decision to deny a discharge is a mixed question of law and fact, the question whether a debtor has made a false oath within the meaning of § 727(a)(4) is an issue of fact. *In re Carp*, 340 F.3d 15, 25 (1st Cir. 2003); *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987). As such, the Bankruptcy Court's finding that the Debtor made false oaths in connection with his petition will be reversed only if it is clearly erroneous.

**III.    Analysis**

Although not so structured, the Debtor's arguments for reversal fall into two broad categories. One set of arguments concerns his amendments and the assertion that they served to cure any inadvertent omissions in his original Schedules and Statement. Another set takes issue with the Bankruptcy Court's determination of his intent and the effect that determination had in the ultimate decision to deny him discharge under § 727(a)(4).

It is widely recognized that a core purpose of the Bankruptcy Code is to provide a fresh start for honest debtors. *See, e.g., In re Carp*, 340 F.3d at 25. It follows that courts denying discharge must identify reasons that are "real and substantial, not merely technical and conjectural." *In re Tully*, 818 F.2d at 110 (quoting *Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir. 1934)). At the same time, discharge is a privilege reserved for debtors who fulfill their "unconditional, absolute obligation to make full disclosure of all matters relevant to the administration of the estate." *In re Whitehead*, 278 B.R. 589, 594 (Bankr. M.D. Fla. 2002). With these principles in mind, and for the reasons that follow, the Bankruptcy Court's denial of the Debtor's discharge under 11 U.S.C. § 727(a)(4)(A) was not clear error and will be affirmed.

7

A.    **The Amendments**

The Debtor first argues that because the Bankruptcy Court allowed his three motions to approve the amendments, its decision denying discharge "essentially overruled those . . . final orders" and was incorrect as a matter of law.[12]  The crux of the Debtor's argument is that by allowing the amendments, the Bankruptcy Court simultaneously determined that their contents were immune from later objections.  This argument is wholly without merit.  The Bankruptcy Court did not consider whether the amendments were made in bad faith or whether they were prejudicial to any party.[13]  And even if the Bankruptcy Court *had* determined that the Debtor lacked bad faith in connection with his motions to amend—which it did not—such a determination would not preclude later objections to the contents of his amended schedules and statement.  *See In re Wood*, 291 B.R. 219, 229 (B.A.P. 1st Cir. 2003) (holding that "[e]ven if the bankruptcy court implicitly determined a lack of bad faith in connection with the Motion to Amend Schedules, that does not preclude the bankruptcy court's consideration of bad faith or

---

[12] As the Debtor himself correctly points out, "neither the Local Rules of Bankruptcy Procedure of Massachusetts nor the Federal Rules of Bankruptcy Procedure require the approval of amendments to Schedules and Statement of Affairs."  Fed. R. Bankr. P. 1009(a) provides that

> [a] voluntary petition, list, schedule, or statement may be amended by the debtor *as a matter of course* at any time before the case is closed.  The debtor shall give notice of the amendment to the trustee and to any entity affected thereby.  On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court. (emphasis added).

The applicable Local Rule instructs debtors to comply with the federal rule.  MLBR 1009-1.  It also provides two specific instances in which a debtor must seek leave to amend, neither of which applies here.  In addition, to the extent prejudice or bad faith is shown, bankruptcy judges should disallow amendments.  *See In re Snyder*, 279 B.R. 1, 6 (B.A.P. 1st Cir. 2002).  The record does not indicate that any of those circumstances exist here.

[13] The *Snyder* court held that any party may object to a proposed amendment on grounds of prejudice.  The entire estate need not be affected; prejudice to a single creditor or even the trustee will suffice.  279 B.R. at 6.

prejudice to creditors in connection with a subsequent objection to an exemption"). To the extent the Bankruptcy Court "approved" the Debtor's motions to amend, its approval was ministerial, and by no means a final determination as to the issue of intent.[14]

The Debtor also asserts that the absence of any objections to his amendments demonstrates his right to a discharge. This argument again improperly equates the right to amend with a finding of good faith. *Id*. ("'the mere fact that [the debtor] can claim an exemption does not necessarily mean that [the debtor] is entitled to it.'" (quoting *In re Wolfberg*, 255 B.R. 879, 883 (B.A.P. 9th Cir. 2000)). Because the Bankruptcy Court did not have the opportunity to determine the Debtor's intent in connection with his amendments, it was proper to entertain the Trustee's challenge.

### B.    The Debtor's Intent

Under 11 U.S.C. § 727(a)(4)(A), a debtor will not be granted a discharge if he knowingly and fraudulently made a false oath or account in or in connection with the case. Unlike § 727(a)(2), where *actual* intent to defraud must be proven before a discharge may be denied, the intent required by § 727(a)(4)(A) is satisfied by a showing of reckless disregard for the truth.[15] Even though courts will not construe an ignorant or inadvertent omission as evidence of

---

[14] The Debtor claims that the Bankruptcy Court was "incorrect as a matter of law" in finding that "he was not truthful and was unwilling to make a full disclosure *at the outset* of the proceedings." The Debtor appears to argue that he was improperly denied discharge on the basis of his initial inaccurate filings. To the extent he interpreted the ruling as based on inaccuracies in his first Statement and Schedules, his argument must fail in light of the Bankruptcy Court's findings as to his lack of credibility throughout the process.

[15] "While a false statement in the Schedules or Statement of Affairs due to mere mistake or inadvertence is not sufficient for the denial of a discharge . . . the courts have held that a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of the fraudulent intent necessary to bar a discharge." *In re Diodati*, 9 B.R. 804, 807-08 (Bankr. D. Mass. 1981) (citations omitted).

fraudulent intent, reckless disregard may nonetheless be found based on the "cumulative effect of a series of innocent mistakes." *In re MacDonald*, 50 B.R. 255, 259 (Bankr. D. Mass. 1985). Similarly, fraud may be inferred from circumstantial evidence. *In re Varrasso*, 37 F.3d at 764.

The Debtor argues that his initial omissions were honest mistakes, and that the Trustee did not prove by a preponderance of the evidence that he possessed the fraudulent intent required to refuse a discharge. *In re Carp*, 340 F.3d at 25. The Bankruptcy Court's determination of the Debtor's intent is largely based on its assessment of his credibility, and the Court must respect its unique opportunity to make that assessment. *Id*. (citing *In re Burgess*, 955 F.2d 134, 137 (1st Cir. 1992)).[16] Even where the opposite conclusion could have been drawn, so long as the Court is not "left with the definite and firm conviction that a mistake has been committed," the Bankruptcy Court's findings with regard to the Debtor's credibility must be upheld. *In re Hannigan*, 409 F.3d 480, 482 (1st Cir. 2005) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)); *In re Carp*, 340 F.3d at 25 (holding that "[e]ven when the totality of the circumstances might plausibly support an inference of skullduggery, the bankruptcy court's contrary finding must be credited unless the evidence is so one-sided as to compel the inference of fraud").

### 1. Debtor's Claims That His Explanations Compel a Finding of Carelessness Rather than Reckless Disregard for the Truth.

The Debtor principally argues that he provided adequate explanations for his omissions at trial and that these explanations compel a finding of mere carelessness rather than reckless

---

[16] In *Tully*, the Court noted that "[t]he rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources." 818 F.2d at 109.

disregard for the truth.  Despite the Debtor's testimony that his omissions were inadvertent and that he corrected any inaccuracies as soon as he learned of them, the Bankruptcy Court found his testimony to be "inconsistent and evasive."  Judge Feeney mentioned three omissions as "the most glaring examples of his reckless disregard for the truth and . . . 'until I get caught' mentality":  (1) his failure to disclose his interest in and income from New England Property; (2) his failure to disclose the additional six transfers of interest in the Florida properties and attributable income; and (3) his failure to disclose the two bank accounts.  The Court will consider the Debtor's explanations for each, bearing in mind that the issue of Debtor's credibility is central to the determination of intent and that the Bankruptcy Court's findings should only be disturbed for clear error.

First, the Bankruptcy Court found that the Debtor's explanations for the omission of New England Property from his original petition were not credible.  The Debtor claims that the omission was a misunderstanding, based on his belief that he was not actively involved in its management and the fact that the Trustee did not directly request that he turn over relevant documents.  It was not, however, for the Debtor to decide which information to disclose.  His duty was to answer each question completely and accurately.[17]  "The recalcitrant debtor may not escape a § 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious."  *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).  Furthermore, it was proper for the Bankruptcy Court to consider the experience and expertise of the Debtor in assessing his

---

[17] Schedule B–Personal Property, Question 12 requires a debtor to itemize stocks and interests in incorporated and unincorporated businesses.

intent.  *In re Groff*, 216 B.R. 883, 887 (Bankr. M.D. Fla. 1998).  The Debtor, who possesses a

graduate degree in finance and has operated numerous businesses, should have known what

constitutes a business interest.[18]

Other evidence supports the Bankruptcy Court's decision as to Debtor's omissions

concerning New England Property.  At the second § 341 meeting, the Debtor offered inconsistent

explanations for his omission.[19]  Even though he did amend his Schedules to reflect his ownership

approximately three weeks after that meeting, he did not report any related income until October

2003, nearly one year after his original petition.[20]  Finally, the Debtor does not deny that the

corporation made payments to him and entities with which he was involved in the months leading

up to the filing of his petition.  These undisputed facts support the finding by the Bankruptcy

---

[18] "While it is clear that an isolated omission or misstatement on the Statement of Financial Affairs would not be, by itself, enough to support a claim, pursuant to § 727(a)(4)(A), a pattern of numerous omissions and misstatements by a sophisticated Debtor who has a business background leads to a different result. Rather, such a pattern warrants the conclusion that these omissions were not mere oversights, but rather willful and knowing omissions. In light of the facts in this record, this Court is satisfied that the Debtor's omissions on his Statement of Financial Affairs were a clear violation of his obligation to make full disclosure. This record, therefore, warrants the denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A)."  *In re Groff*, 216 B.R. at 887.

[19] The Debtor argues that his very attendance at the second § 341 meeting is evidence of his good faith. This second meeting was not optional; it was a continuance of the first meeting, scheduled to "add things that were left out . . . from the package, from the information." Perhaps the Debtor means to argue that because his attorney did not attend the meeting, he was not required to be there.  He testified at trial that he found out the morning of the meeting that his attorney was unable to attend and that he was not given the option to reschedule the meeting. The Debtor, however, was required to attend the meeting. 11 U.S.C. § 343.  Moreover, there is no statutory requirement that the Debtor be represented by counsel.  *See, e.g., In re Merriam*, 250 B.R. 724, 738 (Bankr. D. Colo. 2000).

[20] In 1999, the First Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court's denial of discharge based on a strikingly similar facts.  That debtor filed a Chapter 7 petition in March 1997.  In June 1997, the debtor amended his schedules to reflect his ownership interest in a company only after the trustee learned of the company during an interview with the debtor's wife.  As here, the debtor did not disclose a transaction with that company which yielded him $30,000 for another nine months, approximately one year after the filing of the original petition.  The First Circuit held that this one omission was sufficient to bar discharge: ". . . the Debtor omitted from his Statement of Financial Affairs a significant transaction ($30,000) which occurred only forty days prior to the filing of his bankruptcy petition.  We cannot say that such an omission, as a matter of law, cannot be the basis for denial of discharge."  *In re Grondin*, 232 B.R. 274, 277 (B.A.P. 1st Cir. 1999).

Court that the Debtor's explanations concerning the corporation demonstrated a reckless disregard for the truth.

The second basis for the Bankruptcy Court's finding was his omission of the Florida real estate transfers. At trial, the Debtor testified that he did not believe that the $50,000 payment constituted income, and that it was a "misunderstanding" that he "corrected via amendment."[21] Subsequent disclosures do not, however, automatically absolve a debtor of his original false statements. *In re Whitehead*, 278 B.R. at 595. Furthermore, the $50,000 check from the Realty Trust was written only three months before the Debtor filed his petition. He did not mention the check when he amended his Schedules in January 2003 to include six additional Florida properties, nor did he mention the check at either § 341 meeting. It was not until the check turned up in the Realty Trust's opposition to the Trustee's motion for preliminary injunction that the Debtor amended his Schedules to include it. In short, the $50,000 transaction was recent, substantial, not mentioned at either § 341 meeting of creditors, and discovered from a source other than the debtor himself. *In re Grondin,* 232 B.R. at 278. On these facts, the Bankruptcy Court's finding was not clearly erroneous.

Finally, the Bankruptcy Court relied on the Debtor's omission of two bank accounts. Without legal authority, the Debtor asserts that the Bankruptcy Court improperly considered the bank accounts when they were not included in the list of false oaths set forth in the Trustee's complaint. Fed. R. Civ. P. 15(b) (applicable here by virtue of Fed. R. Bankr. P. 7015) provides that issues not raised in the pleadings may nonetheless be tried by express or implied consent of

---

[21] The Debtor stated that he "didn't feel that [he] needed to because [he] didn't keep the money . . . . [He] used it for the properties."

the parties.  *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995).[22]  Such

consent may be implied in two circumstances:  when the opposing party (1) consents through his

"effective engagement of the claim or through his silent acquiescence" or (2) assents to

introduction of evidence relevant to the issue at trial.  *Id.* (citations omitted).  At trial, the Debtor

did not object to the Trustee's proffer regarding the two bank accounts.  Not only did he fail to

object, but he affirmatively introduced evidence with respect to the accounts.  Even if he had

objected, Fed. R. Civ. P. 15(b) makes clear that he would have been required to demonstrate that

admitting evidence of the accounts would be prejudicial.  *In re Beaubouef*, 966 F.2d at 177.

There was no unfair surprise; the record shows that the Debtor revealed the existence of the

accounts at the first § 341 meeting.  At that meeting, the Trustee learned of the accounts for the

first time, and the Debtor agreed to provide bank statements and cancelled checks.  Because the

Debtor impliedly consented to introduction of evidence on the bank accounts at trial and did not

demonstrate prejudicial impact, the Bankruptcy Court did not "err as a matter of law in

articulating that one of the reasons for barring the discharge of the Debtor was his failure to list

two bank accounts."

---

[22] Fed R. Civ. P. 15(b) provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.  *If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.*

(emphasis added).

**2.    Debtor's Claims That the Timeliness of His Amendments Demonstrates That He Lacked the Requisite Intent to Deceive.**

Next, the Debtor argues that the timeliness of his amendments demonstrates his lack of intent. He cites dicta from numerous cases in which debtors were denied discharge in part due to delays in correcting inaccuracies. The Debtor also claims that the Bankruptcy Court failed to give appropriate weight to the fact that "all amendments with the exception of two" were filed before the § 727 suit.[23]  Timing is one of many factors a bankruptcy judge may consider in determining a debtor's intent. Where the amendments are filed after the omitted information has been discovered or revealed by someone other than the debtor, the timeliness of the amendments is less significant. Here, the Debtor amended his Statement to include the $50,000 check three months after his original filing, but that relatively short period followed the revelation of the check in their opposition to the Trustee's motion for a preliminary injunction.

**3.    Debtor's Claims That His Good Faith Is Evidenced by the Fact That His Disclosures Were Voluntary.**

Finally, the Debtor argues that the fact that he "[came] forward with omitted material of his own accord is strong evidence that there was no fraudulent intent in the omission." *See In re Brown*, 108 F.3d 1290, 1295 (10th Cir. 1997). In determining intent, the fact that a debtor corrects misstatements on his own is a relevant consideration. *In re Grondin*, 232 B.R. at 278 n. 7.

Here, while the Debtor did correct some inaccuracies on his own, at least two

---

[23] The cases cited by the Debtor are unpersuasive. In *Sullivan*, for example, the court found that the debtor used the two years between the filing of his original statements and his amended ones to alter and conceal assets. *In re Sullivan*, 204 B.R. 919 (Bankr. N.D. Tex. 1997). It simply does not follow that a delay of less than two years amounts to evidence of innocent intent. Furthermore, it is not clear that the Debtor's filing of amendments before the § 727 suit was brought constitutes "timeliness."

misstatements were disclosed by others.[24]  Even one false oath has constituted grounds for denial

of discharge.  *Id*. at 277.  With regard to the $50,000 check and ownership interest in New

England Property, the Debtor did not come forward on his own accord; he filed amendments after

his omissions were disclosed in other proceedings.  That is not a voluntary disclosure.

Where the Bankruptcy Court has rendered an opinion that is reasonable in light of the

record, it is not this Court's function to disturb its factual findings or the legal conclusions upon

which they are based.  *In re Carp*, 340 F.3d at 22.  The Debtor had an opportunity at trial to

prove that his intent was to be forthright throughout the bankruptcy process.  The Bankruptcy

Court concluded that the Debtor's pattern of nondisclosure was not inadvertent, and the Debtor

has not persuaded this Court that it should not defer to the Bankruptcy Court's findings.

C.    **Estoppel**

The Debtor stated in his brief that the Bankruptcy Court should be estopped from finding

that the omissions in his original disclosures were sufficient to bar discharge.  Following the

Trustee's (correct) assertion that the doctrine of judicial estoppel does not apply, the Debtor

explained in his Reply Brief that it was an "inadvertent generic utilization of a doctrine which is

not applicable," and that the word "prevented" is more appropriate.  Based on that representation,

the Court will deem the estoppel argument waived by the Debtor.

D.    **Alleged Failure to Refer to *In re Varrasso***

The Debtor finally claims that the Bankruptcy Court erred by omitting the case of *In re*

---

[24] The record shows two instances in which the Debtor corrected misstatements in his original Schedules and Statement only after they were discovered by the Trustee: (1) the existence of New England Property was discovered by the Trustee during a title search; and, (2) the $50,000 check was revealed in the adversary proceeding against the Realty Trust.

*Varrasso*, 37 F.3d 760 (1st Cir. 1994), from its analysis.  In that case, the Court of Appeals

vacated an award of summary judgment in the Chapter 7 trustee's favor, holding that the record

was not sufficiently developed to compel a finding of fraudulent intent.  *Id*. at 765.  The court

remanded the case to the District Court, holding that while circumstantial evidence may certainly

serve to establish the existence of fraud, the undisputed facts before it were insufficient to support

an inference of deliberateness.  *Id*. at 764.

       The Bankruptcy Court's failure to explicitly refer to *Varrasso* was not improper.  Here,

the record contains sufficient evidence in support of the court's finding of reckless disregard for

the truth.  Nothing in the Bankruptcy Court's findings is inconsistent with the court's holding in

*Varrasso*, and its omission was not an error of law.

## IV.    <u>Conclusion</u>

       For the foregoing reasons, the order of the Bankruptcy Court is AFFIRMED.

**So Ordered.**

                                            /s/ F. Dennis Saylor            
                                            F. Dennis Saylor IV
                                            United States District Judge

Dated: May 23, 2006